# No. 26-40011

# In the United States Court of Appeals for the Fifth Circuit

**JOHN D. POLLOCK,**

**Plaintiff — Appellant,**

**v.**

**AMERICAN ENDOWMENT FOUNDATION,**

**Defendant — Appellee.**

**Appeal from the United States District Court For the Eastern District of Texas, Sherman Division**

## BRIEF OF APPELLANT

Jeffrey S. Lowenstein
Texas Bar No. 24007574
jlowenstein@bellnunnally.com
Saba F. Syed
Texas Bar No. 24088497
ssyed@bellnunnally.com
**Bell Nunnally & Martin LLP**
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1400
Telecopier: (214) 740-1499

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**JOHN POLLOCK***

**ESTATE OF HERBERT K. BENNETT***

**HERBERT K. BENNETT CHARITABLE FUND***

**HERBERT K. BENNETT LIVING TRUST***

*There is no parent corporation or publicly held corporation that owns 10% or more of Appellant's membership interest.

*/s/ Jeffrey S. Lowenstein*
Jeffrey S. Lowenstein

## CERTIFICATE OF PARTIES

The following is a complete list of all parties to the trial court's orders and the names and addresses of all trial and appellate counsel.

| | |
|---|---|
| **APPELLANT JOHN D. POLLOCK:** | **Appellate Counsel:**<br><br>Jeffrey S. Lowenstein<br>Saba F. Syed<br>**BELL NUNNALLY & MARTIN LLP**<br>2323 Ross Avenue, Suite 1900<br>Dallas, Texas 75201<br><br>**Trial Counsel:**<br><br>Jeffrey S. Lowenstein<br>**BELL NUNNALLY & MARTIN LLP**<br>2323 Ross Avenue, Suite 1900<br>Dallas, Texas 75201 |
| **APPELLEE AMERICAN ENDOWMENT FOUNDATION:** | **Appellate and Trial Counsel:**<br><br>William S. Helfand<br>**LEWIS BRISBOIS BISGAARD & SMITH LLP**<br>24 Greenway Plaza, Suite 1400<br>Houston, TX 77046 |

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests that this Court grant oral argument in this appeal. This case presents substantial and novel questions regarding the legal obligations of sponsoring organizations administering donor advised funds under the Internal Revenue Code. Specifically, this appeal requires this Court to examine the extent to which a sponsoring organization may lawfully refuse to honor the grant recommendations of a duly appointed donor advisor, and what remedies, if any, are available to donors, donor advisors, or intended charitable beneficiaries when the charitable purpose of the fund is disregarded. These questions implicate uncharted intersections of charitable trust law, contract principles, and federal tax-exempt organization regulations—issues that have not been authoritatively resolved by this Court or any other circuit court of appeals.

The Fifth Circuit has long recognized that oral argument is particularly valuable when a case involves complex legal issues with potential precedential significance or broader implications for public policy. This case satisfies those criteria. Donor advised funds represent one of the fastest-growing vehicles for charitable giving in the United States, holding billions of dollars in charitable assets. The resolution of this appeal will have significant precedential value, as it will establish important guidance for sponsoring organizations, donor advisors, and charitable beneficiaries throughout this Circuit and potentially nationwide. The

public interest in the proper administration of charitable funds and the fulfillment of donors' philanthropic intentions further counsels in favor of full appellate consideration through oral argument.

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS....................................................2

CERTIFICATE OF PARTIES....................................................................3

STATEMENT REGARDING ORAL ARGUMENT .............................................4

TABLE OF CONTENTS..............................................................................6

TABLE OF AUTHORITIES ........................................................................9

KEY TO RECORD CITATIONS..................................................................13

STATEMENT OF JURISDICTION................................................................14

ISSUES PRESENTED FOR REVIEW .............................................................15

INTRODUCTION ......................................................................................16

STATEMENT OF THE CASE........................................................................19

A. The Decedent, Herbert K. Bennett, Creates a Donor Advised Fund with AEF Serving as the Sponsoring Organization..............................................19

B. The Third Amended Complaint Provided Additional Factual Detail Regarding Bennett's Appointment of Pollock as Donor Advisor to the Fund and AEF Acceptance of the Authorization. .......................................22

C. Bennett Passes Away in 2016 and Pollock, as Independent Executor, Probates the Will....................................................................................24

D. Pollock Transfers $4,000,000 in Assets to the Fund Following Bennett's Passing and AEF Treats Pollock as Donor Advisor. ....................24

E. AEF's New Leadership Intermittently Refuses Pollock's Grant Recommendations.......................................................................................25

F. AEF Recognizes Pollock's Role as Donor Advisor and Yet Refuses to Distribute $6.5 Million for Charitable Purposes. ........................................26

SUMMARY OF THE ARGUMENT ..............................................................28

STANDARD OF REVIEW .......................................................................................30

A. Standard of Review on 12(b)(6) Motion to Dismiss. ...................................30

B. Standard of Review on Denial of Motion for Leave to Amend. ..................31

C. Standard of Review on Denial of Motion for Reconsideration. ...................32

D. Standard of Review on Rule 60(a) Ruling .................................................32

ARGUMENT AND AUTHORITIES..................................................................33

I. The District Court Correctly rejected AEF's Challenge to Article III Standing...........................................................................................33

II. The District Court Did not Address AEF's Rule 12(b)(6) Argument ............33

III. The District Court Committed Reversible Error by Dismissing the Entire Suit with Prejudice Under Rule 12(b)(6). ...........................................33

A. The District Court's *Sua Sponte* Rulings Without Notice or a Chance to Respond Deprived Pollock of a Fair Proceeding. .................................33

1. The district court committed reversible error by unilaterally converting a 12(b)(1) motion to dismiss into a 12(b)(6) motion and dismissing the lawsuit based on grounds raised for the first time in the reply brief.......................................................................34

2. The district court committed reversible error by sua sponte dismissing Pollock's claims as Independent Executor and trustee....................35

3. Pollock was denied a fair opportunity to address issues not raised in the Motion to Dismiss. ...................................................37

4. The Second Amended Complaint adequately established standing. ........................................................................................39

i. Pollock adequately pled "an active or special interest" to bring claims against AEF. .......................................................................40

ii. Alternatively, Pollock adequately pled contractual standing. ..43

iii. Pollock alleged alternate grounds establishing contractual standing other than donor advisor ..........................................45

5. Permitting amendment would not have been futile.........................46

i. The district court erred in finding an amendment would be futile. ..........................................................................................46

B. The District Court Abused Its Discretion in Denying Pollock's Motion to Reconsider. ...........................................................................................47

1. Any delay in Pollock seeking leave to amend was based on the good faith belief the SAC addressed AEF's Article III arguments. ...........49

2. Pollock's motion for leave was not an attempt to present arguments seriatim but to bolster the issues the district court identified as deficient. ..........................................................................................50

C. The District Court Abused Its Discretion by Vacating and Rescinding its Order Granting the Leave to File the Third Amended Complaint..........53

CONCLUSION ..........................................................................................55

PRAYER FOR RELIEF ..............................................................................56

CERTIFICATE OF SERVICE ....................................................................57

CERTIFICATE OF COMPLIANCE ...........................................................58

# TABLE OF AUTHORITIES

**CASE** **PAGE**

*Abrams v. Baker Hughes, Inc.*,
292 F.3d 424 (5th Cir. 2002) ....................30

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................30

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................30

*Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*,
192 S.W.3d 780 (Tex. 2006) ....................36, 45

*Biron v. Upton*,
737 F. App'x 713 (5th Cir. 2018) ....................32

*Byrd v. Bates*,
220 F.2d 480 (5th Cir. 1955) ....................46

*C.f. Schiller v. Physicians Res. Grp. Inc.*,
342 F.3d 563 (5th Cir. 2003) ....................53

*Coffee v. William Marsh Rice Univ.*,
403 S.W.2d 340 (Tex. 1966) ....................41

*Copeland v. Wasserstein, Perella & Co., Inc.*,
278 F.3d 472 (5th Cir. 2002) ....................30

*Davoodi v. Austin Ind. Sch. Dist.*,
755 F.3d 307 (5th Cir. 2014) ....................33, 34

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ....................47, 49

*Foman v. Davis*,
371 U.S. 178 (1962)....................28, 48

*Gillaspy v. Dall. Indep. Sch. Dist.*,
278 F. App'x 307 (5th Cir. 2008)....................35

*Gray v. Saint Matthews Cathedral Endowment Fund, Inc.*,
544 S.W.2d 488 (Tex. App.—Texarkana 1976, writ ref'd n.r.e.) .......... 37, 40, 42

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,
313 F.3d 305 (5th Cir. 2002) .......... 46

*ICEE Distribs., Inc. v. J&J Snack Foods Corp.*,
445 F.3d 841 (5th Cir. 2006) .......... 32

*Jones v. Anderson-Tully Co.*,
722 F.2d 211, 212 (5th Cir. 1984) .......... 54

*Jones v. Cain*,
600 F.3d 527 (5th Cir. 2010) .......... 35

*Matter of Life Partners Holdings, Inc.*,
926 F.3d 103 (5th Cir. 2019) .......... 49

*Lokey v. Texas Methodist Foundation*,
479 S.W.2d 260, 265 (Tex. 1972) .......... 42

*McLin v. Twenty-First Jud. Dist.*,
79 F.4th 411 (5th Cir. 2023) .......... 32

*Miller v. Sam Houston State Univ.*,
986 F.3d 880 (5th Cir. 2021) .......... 31

*Miramore Tr. v. United Van Lines, LLC*,
2017 WL 661374 (N.D. Tex. Feb. 17, 2017) .......... 36

*Musk v. Altman*,
2026 WL 587169 (N.D. Cal. Jan. 15, 2026) .......... 40, 41

*Navarro Sav. Ass'n v. Lee*,
446 U.S. 458 (1980) .......... 36

*Parker v. Graves*,
479 F.2d 335 (5th Cir. 1973) .......... 36

*Pinkert v. Schwab Charitable Fund*,
48 F.4th 1051 (9th Cir. 2022) .......... 40

*Residents of Gordon Plaza, Inc. v. Cantrell*,
25 F.4th 288 (5th Cir. 2022) ........................................ 31, 35

*Rivera v. PNS Stores, Inc.*,
647 F.3d 188 (5th Cir. 2011) ........................................ 32, 54

*Taylor v. Books A Million, Inc.*,
296 F.3d 376 (5th Cir. 2002) ........................................ 31, 45

*Thomas v. Chevron U.S.A., Inc.*,
832 F.3d 586 (5th Cir. 2016) ........................................ 31

*Thompson v. Dall. City Atty's Off.*,
93 F.3d 464 (5th Cir. 2019) ........................................ 35

*Walker v. Transfrontera CV de SA*,
634 F. App'x 422 (5th Cir. 2015) ........................................ 32

*Whitmire v. Victus Ltd.*,
212 F.3d 885 (5th Cir. 2000) ........................................ 31

**STATUTES**

26 U.S.C. § 4966(d)(2) ........................................ 16, 21, 23

26 U.S.C. § 4966(d)(2)(A)(iii) ........................................ 44

28 U.S.C. § 1291 ........................................ 14

28 U.S.C. § 1332(a)(1) ........................................ 14

**OTHER AUTHORITIES**

RESTATEMENT (SECOND) OF TRUSTS § 391 (1959) ........................................ 40

5 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1321
(1969)) ........................................ 36, 37

**FEDERAL RULES**

Federal Rule of Appellate Procedure 4(a)(4)(A) ........................................ 14

Rule 9(a) ........................................ 29, 36

Rule 12(b)(1) ........ *passim*

Rule 12(b)(6) ........ *passim*

Rule 15(a) ........ 15, 29, 31, 47, 48, 49

Rule 15(a)(2) ........ 14

Rule 59(e) ........ 14, 29, 47, 48, 49, 53

Rule 60(a) ........ *passim*

Rule 60(b) ........ 14, 32, 47, 53

## KEY TO RECORD CITATIONS

| | |
|---|---|
| "ROA" | Record on Appeal filed January 18, 2025. |

**TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:**

Plaintiff-Appellant John Pollock appeals the judgment in favor of Defendant-Appellee entered by United States District Judge Amos L. Mazzant on July 23, 2025 and December 9, 2025 in Civil Action No. 4:24-cv-669, in the United States District Court for the Eastern District of Texas, Sherman Division.

## STATEMENT OF JURISDICTION

This appeal emanates from a final judgment that disposed of all parties and issues (ROA 202.); a Motion to Reconsider, Vacate and/or Amend Judgment Pursuant to FRCP 59(e) and 60(b) (ROA 387.); and an order rescinding and vacating a prior Order Granting Plaintiff's Corrected Motion for Leave to File Third Amended Complaint Pursuant to FRCP 15(a)(2) (ROA 387.) The district court had jurisdiction by virtue of diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332(a)(1). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. The district court entered final judgment on July 23, 2025. (ROA 202.) Pollock timely filed a Motion to Reconsider under Rules 59(e) and 60(b), which tolled the time to appeal under Federal Rule of Appellate Procedure 4(a)(4)(A). The district court denied that motion on December 9, 2025. (ROA 387.) Pollock timely filed his notice of appeal thereafter.

## ISSUES PRESENTED FOR REVIEW

1. Whether the district court erred by *sua sponte* converting AEF's Rule 12(b)(1) motion into a Rule 12(b)(6) dismissal on a contract-modification theory raised for the first time in the reply brief—without notice to Pollock or an opportunity to respond.

2. Whether the Second Amended Complaint stated a claim under the proper "active or special interest" standard for enforcing the charitable purpose of a donor advised fund. And whether, even under the contractual standing framework the district court imposed, Pollock's well-pleaded allegations were sufficient to survive dismissal.

3. Whether the district court erred by finding amendment “futile” without any explanation, while its own opinion identified pleading deficiencies that could have been cured by amendment.

4. Whether the district court erred by dismissing the entire case without addressing Pollock’s independently pleaded standing as Independent Executor of Bennett's estate and trustee of Bennett's trust.

5. Whether the district court abused its discretion by denying post-judgment leave to amend under Rule 15(a)’s liberal standard in considering Pollock’s Motion for Reconsideration.

6. Whether the district court abused its discretion by invoking Rule 60(a) to rescind a deliberate order granting leave to file the Third Amended Complaint—after Pollock completed briefing in reliance on that order—and then denying Pollock leave to revise his briefing.

## INTRODUCTION

Donor advised funds hold billions of dollars in charitable assets across the United States. These funds exist because the Internal Revenue Code permits donors to make irrevocable gifts to sponsoring organizations, take an immediate tax deduction, and then rely on the sponsoring organization to distribute those assets for charitable purposes over time. *See* 26 U.S.C. § 4966(d)(2). The Code also permits donors to appoint advisors—people the donor trusts to recommend how and when those charitable dollars are distributed. But what happens when a sponsoring organization simply refuses to listen? When it ignores the donor's designated advisor, sits on millions in charitable funds, collects management fees, and answers to no one? That is this case.

Herbert K. Bennett was a philanthropist who cared deeply about supporting charities with a Jewish worldview. In 2013, he established the Herbert K. Bennett Charitable Fund (the "Fund"), a donor advised fund sponsored by Appellee American Endowment Foundation ("AEF"). Bennett made an initial contribution of $1,000,000. He designated Appellant John Pollock—his longtime financial advisor,

trusted friend, Independent Executor of his estate, and Trustee of his living trust—as a donor advisor authorized to make grant recommendations on his behalf. AEF accepted the funds, accepted the designation, and for years treated Pollock as the donor advisor without objection.

Bennett passed away in 2016. After his death, Pollock transferred over $4,000,000 in additional assets to the Fund from Bennett's trust, growing the Fund to approximately $5,000,000. AEF accepted every dollar. From 2013 to 2020, AEF recognized Pollock as the donor advisor and communicated with him directly about grants. Then AEF's leadership changed. The new leadership began refusing Pollock's grant recommendations—sometimes because Pollock was not Jewish, sometimes because the requests were "too large," and eventually by disputing Pollock's status as donor advisor altogether. Today, the Fund holds approximately $6.5 million in charitable assets. AEF has refused to distribute any of it. The charities Bennett intended to support, including Prager University Foundation, Ben-Gurion University, the Jewish Community Center of Dallas, and the Simon Wiesenthal Center, have received nothing. Meanwhile, AEF continues to collect management fees on the ever-growing Fund.

Pollock sued to enforce the charitable purpose of the Fund. The district court correctly rejected AEF's challenge to Article III standing under Rule 12(b)(1). But the district court then *sua sponte* converted the standing dispute into a Rule 12(b)(6)

dismissal, adopting a contract-modification theory that AEF raised for the first time in its reply brief. The district court gave Pollock no notice and no opportunity to respond to this new theory. It then dismissed the entire case with prejudice, finding amendment would be "futile"—without a word of explanation as to why, and despite identifying pleading deficiencies in its own opinion that were plainly curable.

The errors compounded from there. The district court never addressed Pollock's independently pleaded standing as Independent Executor and Trustee—two capacities that confer standing regardless of the donor advisor dispute. When Pollock moved for reconsideration and for leave to amend, the court initially granted leave to file a Third Amended Complaint. Pollock completed his briefing in reliance on that order. Then, after all briefing was finished, the court invoked Rule 60(a) to rescind the order granting leave—treating its own deliberate judicial decision as a "clerical error"—and denied Pollock any opportunity to revise his briefing. The district court then denied the motion for reconsideration based on undue delay and that Pollock was raising arguments seriatim, findings that were unsupported by the record and were the direct result of the court's own procedural choices.

The implications of this ruling extend well beyond this case. If the district court's decision stands, it means that a sponsoring organization holding millions in charitable assets can refuse to honor a donor's wishes, refuse to recognize the donor's designated advisor, refuse to distribute a single dollar to charity, and face no

legal accountability from the one person the donor trusted to carry out his philanthropic legacy. The district court's ruling eviscerates the "active or special interest" doctrine that Texas courts have long applied to allow enforcement of charitable trusts by parties other than the Attorney General. It renders the donor advisor designation—a concept embedded in the very statutory definition of a donor advised fund—meaningless. And it leaves sponsoring organizations free to warehouse charitable funds indefinitely, profiting from management fees while the intended beneficiaries receive nothing. This Court should reverse and remand so that Pollock can pursue these worthy claims.

## STATEMENT OF THE CASE[1]

### A. The Decedent, Herbert K. Bennett, Creates a Donor Advised Fund with AEF Serving as the Sponsoring Organization.

1. Herbert K. Bennett was a generous man with a philanthropic heart. (ROA 90.) He particularly cared for advancing the cause of charitable organizations devoted to the protection, preservation, and growth of Jewish culture. (ROA 90.) This is evidenced by the donations he made while living, and the testamentary provisions he made to ensure that, even upon his death, his money would continue to advance this noble cause. (ROA 90.)

[1] The facts set forth in Sections A, C, and D are from the Second Amended Complaint, which are taken as true for the purpose of review for an Order Granting 12(b)(6) Motion to Dismiss.

2. Pollock, Bennett's trusted, long-time financial advisor and friend, assisted Bennett in his efforts to support these Jewish charities for many years. (ROA 90.)

3. On January 17, 2013, Bennett signed his Last Will and Testament and a Trust Agreement Creating the Herbert K. Bennett Living Trust (the "Trust"). (ROA 90.) The Will named Pollock to serve as Independent Executor. (ROA 90—91.)

4. The Will further provided that the substantial remainder of Bennett's assets and property be transferred to his Trust upon his death. (ROA 91.) The Trust, which named Pollock as Trustee, provided that upon Bennett's death (after relatively *de minimis* distributions to certain individuals), the entire balance of the Trust was to be distributed to the Herbert K. Bennett Charitable Fund and managed by AEF. (ROA 91.) The Trust further stated that the Fund would be governed by a Board of Directors established by Pollock, and that Pollock would serve as the President of the Board. (ROA 91.) The Trust documents made clear that the intended use of the assets transferred to the Fund was "for the purposes of benefitting charities that [Bennett] has supported in the past, or charities with the purposes that [Bennett] has supported in the past," that purpose being the growth and preservation of charities with a Jewish worldview, and that Pollock was to carry out that purpose. (ROA 91.)

5. Later that year, on July 9, 2013, Bennett applied for the Fund, which is a Donor Advised Fund (the “Application”). (ROA 91.) A “Donor Advised Fund” is a fund or account that is owned by a “sponsoring organization” and that a donor or “any person appointed or designated by such donor” has advisory privileges with respect to the distribution or investments of amounts held in the fund. (ROA 91); *See* 26 U.S.C. § 4966(d)(2). AEF served as the Fund’s sponsoring organization, and Bennett served as the initial donor advisor. (ROA 91.) Bennett designated the “Statement of Purpose” for the Fund as the support of “charities with a Jewish worldview.” (ROA 91.) Bennett made an initial contribution of $1,000,000.00. (ROA 91.)

6. Bennett designated Pollock as a donor advisor to make grants on his behalf. (ROA 92.) A “donor advisor” is someone designated by a donor to have advisory privileges with respect to the charitable distributions from the fund. 26 U.S.C. 4966(d)(2). AEF acknowledged Pollock’s role as a donor advisor up until 2020, when an AEF executive informed him that he could not continue serving as *both* a donor advisor and a financial advisor. (ROA 92.) Abiding AEF’s request, Pollock ceased serving as financial advisor for the Fund, but continued serving as a donor advisor. (ROA 92.)

7. By 2023, over $4,000,000 in assets had been transferred to the Fund by the Trust, and the Fund’s assets had grown to approximately $5,000,000.00. The vast

majority of these funds were transferred by Pollock after Bennett's death, and accepted from Pollock by AEF. (ROA.92.)

### B. The Third Amended Complaint Provided Additional Factual Detail Regarding Bennett's Appointment of Pollock as Donor Advisor to the Fund and AEF Acceptance of the Authorization.[2]

8. Pollock assisted Bennett in completing an application to appoint Pollock as Donor Advisor (the "Application") and spoke with AEF's President and CEO regarding Pollock's designation as an additional donor advisor. (ROA 248.) AEF's President and CEO reassured Pollock and Bennett that AEF would accept a letter signed by Bennett, authorizing Pollock to make grant recommendations. (ROA 248.) AEF's President and CEO further reassured Pollock and Bennett that the letter did not need to be in a specific form or format. (ROA 248.) As to evidence of these discussions, page 15 of the Application contains a modification in Pollock's handwriting (as Bennett's agent), stating, "Letter Authorizing Rt [Right] to Make Grants on His Behalf." (ROA 248.) This written modification incorporates by reference the letter Bennett sent about a week later to AEF, designating Pollock as a party authorized to make grants on his behalf. (ROA 248.) At the time of completing the Application, Bennett and Pollock did not believe a successor donor advisor was

[2] The facts set forth in Sections B, E, and F are from the Third Amended Complaint. (ROA 244.) The district court granted the motion for leave to file Third Amended Complaint and treated it as the live pleading until it vacated the motion for leave after all parties completed briefing on the Motion to Reconsider. (ROA 387.) While these factual statements are not deemed true for purposes of the de novo review of the sufficiency of the Second Amended Complaint, they are relevant to this Court's consideration of futility of amendment.

a sufficient title for Pollock because they wanted him to be able to make grant recommendations while Bennett was alive. (ROA 248—249.)

9. On July 18, 2013, Bennett delivered a letter to AEF stating that he authorized Pollock to make grants on his behalf from the Fund to fulfill its charitable purpose. (ROA 249.) This is precisely the type of authorization permitted under the United States Code. *See* 26 U.S.C. § 4966(d)(2) (providing that the donor and "any person appointed or designated by such donor" have advisory privileges with respect to distribution of amounts held by the fund, among other things). The letter then states, "If you have questions regarding this matter please contact John Pollock at 972-396-XXXX." (ROA 249.) AEF received this letter. (ROA 249.) Yet AEF did not contact Bennett or Pollock to inform them that AEF objected to Pollock acting as a donor advisor. (ROA 249.)

10. On September 17, 2013, AEF sent an acceptance letter to Bennett stating, "We have received and approved your application to establish the Herbert K. Bennett Charitable Fund as a Donor Advised Fund of [AEF]." (ROA 249.) At this point, AEF had already received the Application dated July 9, 2013 expressly referencing a letter of authorization and the letter dated July 18, 2013. (ROA 249.) AEF accepted the Application and Bennett's modifications by its September 17, 2013 letter. (ROA 249.) The Application incorporates by reference the July 18, 2013 Letter. (ROA 249.)

11. In the alternative, the July 18, 2013 Letter modifies the Application and AEF accepted that modification because it instructed Pollock on how to create the modification, through its September 17 letter, and its subsequent conduct in recognizing Pollock as the donor advisor and continuing to accept funds from Pollock after receiving notice that Pollock would act as donor advisor. (ROA 249—250.) In the further alternative, AEF, through the letter, represented to Pollock and Bennett that it had accepted the application and letter as the necessary documents for initiating the Fund. (ROA 250.)

**C. Bennett Passes Away in 2016 and Pollock, as Independent Executor, Probates the Will.**

12. On January 28, 2016, Bennett passed away. Pollock, as independent executor, filed an application to probate the Will on March 17, 2016. (ROA 92.) On May 11, 2016, Bennett's Will was probated, the Court recognized Pollock as Independent Executor, and the Court granted Letters Testamentary to him. (ROA 92.)

**D. Pollock Transfers $4,000,000 in Assets to the Fund Following Bennett's Passing and AEF Treats Pollock as Donor Advisor.**

13. By 2023, over $4,000,000 in assets had been transferred to the Fund, and the Fund's assets had grown to approximately $5,000,000.00. (ROA 92.) Pollock transferred the vast majority of these funds after Bennett's death. (ROA 92.) Pollock sent the funds to AEF relying on AEF's acceptance of Pollock as a donor

advisor and with the understanding AEF would treat him as such in authorizing grant recommendations. (ROA 92.) From July 2013 until early 2020, AEF treated Pollock as a donor advisor and did not object to his status. (ROA 92—93.)

14. In March of 2020, Noel Juglion, the Chief Investment Oversight Officer for AEF, informed Pollock that he could not serve as *both* the financial advisor and donor advisor for the Fund. (ROA 92.) Abiding AEF's request, Pollock ceased serving as financial advisor for the Fund at that time. (ROA 92.) Scott Winters replaced him as the financial advisor for the Fund, and currently holds the position. (ROA 92.)

**E. AEF's New Leadership Intermittently Refuses Pollock's Grant Recommendations.**

15. AEF's treatment of Pollock changed after new leadership took over in or about 2020. (ROA 250.) As part of that change, the former President and CEO of AEF left the company along with Kristin Wilcoxson, both of whom had a solid relationship with Pollock. (ROA 250.)

16. AEF's new leadership began to intermittently refuse to consider Pollock's grant recommendations despite being designated by Bennett to make grants on his behalf seven years earlier and accepting millions in assets Pollock transferred to the Fund on Bennett's behalf. (ROA 250.) AEF began refusing Pollock's grant recommendations for reasons unrelated to Pollock's status as donor advisor. (ROA 250.) AEF's reasons for refusing grant recommendations included

that Pollock was not Jewish, that Pollock could not serve as both financial advisor and donor advisor to the fund, and that grant requests were too large. (ROA 250-251.)

17. Pollock advised AEF to make a grant of the entire balance of the Fund to an organization called iGift Fund, another donor advised fund sponsor. (ROA 251.) AEF, in several emails, responded that it would move forward with doing so. (ROA 251.) However, after initiating the process to transfer of the Fund's balance, AEF's new leadership stopped the transfer. (ROA 251.)

### F. AEF Recognizes Pollock's Role as Donor Advisor and Yet Refuses to Distribute $6.5 Million for Charitable Purposes.

18. In March 2023, AEF honored a $200,000 grant recommendation withdrawal by Pollock's agent, who was a Jewish attorney. (ROA 251.) Pollock requested the Jewish attorney make the recommendation because AEF previously resisted Pollock's recommendations on the basis that Pollock was not Jewish. (ROA 251.) AEF approved the $200,000 grant recommendation by Pollock's agent and directed the approval letter to Pollock. (ROA 251.) After this withdrawal, AEF refused to cooperate with Pollock further. (ROA 251.)

19. At about the same time, Pollock (by and through the same attorney) made four additional grant recommendations to AEF, each in the amount of $200,000.00, and each going to charities that supported the stated purpose of the Fund, to promote charities with a Jewish worldview. (ROA 252.) Those charities

were the Prager University Foundation, Ben-Gurion University, the Jewish Community Center of Dallas, and the Simon Wiesenthal Center. (ROA 252.) AEF refused to make any of the above grant donations requested by Pollock, on behalf of Bennett. (ROA 252.) AEF previously made donations to each of these charities, besides Prager University Foundation, when it was Bennett making the grant request to AEF. (ROA 252.)

20. AEF's lack of cooperation with Pollock has not improved since 2023. (ROA 252.) AEF has stubbornly refused to accept Pollock's grant recommendations. (ROA 252.) The grant recommendations Pollock has made have all been reasonable requests to make donations to charities with a Jewish worldview, including charities AEF supported in the past. (ROA 252.)

21. Because AEF, by continuing to ignore Pollock's grant recommendations, is refusing to recognize his advisory status and is further defeating the very purpose of the Fund by not distributing any of the $6.5 million currently sitting in the Fund, Pollock brought the underlying action. (ROA 252.) AEF has no excuse for ignoring Pollock's recommendations nor for failing to distribute any funds since new management took over in 2020 (ROA 252.)[3]

---

[3] AEF argues that the donor advisor designation is essentially an illusory promise to consider grant recommendations from a benefactor's designees, but the right to submit recommendations was a material term and consideration in making the decision to send more than $4 million to AEF.

## SUMMARY OF THE ARGUMENT

AEF moved to dismiss under Rule 12(b)(1) for lack of Article III standing. The district court rejected that challenge—but then *sua sponte* converted the motion into a Rule 12(b)(6) dismissal based on a contract-modification theory that AEF raised for the first time in its reply brief. Pollock had no notice and no opportunity to respond to this new theory.

On the merits, the district court applied the wrong legal standard. Pollock's standing to enforce the charitable purpose of the Fund was premised on an "active or special interest" in the Fund's administration—a standard Pollock plainly satisfies as Bennett's designated donor advisor, the Independent Executor of Bennett's estate, and the trustee of the Trust that donated over $4 million. The district court never addressed this body of law. Instead, it required contractual privity—a standard inapplicable to Pollock's claims. And even under that inapplicable framework, the SAC's well-pleaded allegations were sufficient: Bennett designated Pollock as donor advisor, AEF accepted and acted on that designation for seven years, and the district court erred in refusing to accept those allegations as true and instead resolved disputed facts in favor of AEF.

The district court dismissed with prejudice and declared amendment "futile"—but offered no explanation for that conclusion. This was error this Court can review *de novo* but was also an abuse of discretion under *Foman*, 371 U.S. 178,

182 (1962), which holds that "outright refusal to grant leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion." The court's own opinion identified specific pleading deficiencies that could have been cured, making the futility finding especially indefensible.

The district court compounded this error on reconsideration. Rather than applying Rule 15(a)'s liberal standard in considering Pollock's Rule 59(e) motion—which requires leave to amend be "freely given when justice so requires"—the court denied post-judgment leave based on undue delay and that Pollock was raising arguments seriatim. Neither finding is supported by the record. Any delay or new arguments resulted from the court's own actions in dismissing on grounds not raised in the motion. Also, the executor and trustee theories were not new arguments but standing grounds expressly pleaded in paragraph 10 of the SAC that the motion to dismiss and the district court had silently bypassed.

The district court's dismissal of the entire case with prejudice without ever addressing Pollock's independently pleaded standing as Independent Executor and trustee was further error. Bennett was in contractual privity with AEF; Pollock assumed those rights as executor. The Trust transferred the Fund's corpus. The court's only response—that Pollock did not "expressly" sue in those capacities—ignored the body of the SAC and is contrary to Rule 9(a) and Fifth Circuit precedent holding that failure to specify capacity in the caption is not a fatal defect.

The district court invoked Rule 60(a) to rescind its order granting leave to file the Third Amended Complaint. But that order was a deliberate judicial act made after the court noted AEF did not respond, not a clerical error. Rule 60(a) does not authorize vacatur of a deliberate judicial choice. The rescission came only after Pollock had completed briefing on the Motion for Reconsideration in reliance on that order, and the court gave Pollock no opportunity to revise his briefing. This sequence of events was both legally unauthorized and prejudicial.

## STANDARD OF REVIEW

### A. Standard of Review on 12(b)(6) Motion to Dismiss.

This Court reviews *de novo* a district court's dismissal under Rule 12(b)(6) and accepts all well-pleaded factual allegations as true. *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002). The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 477 (5th Cir. 2002). Under Rule 12(b)(6), to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. The court accepts as true the well-

pleaded factual allegations in the complaint and construes them in the light most favorable to the plaintiff. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

A court of appeals reviews *de novo* a district court's *sua sponte* decision to dismiss on grounds not raised in a motion to dismiss. *See Miller v. Sam Houston State Univ.*, 986 F.3d 880, 888 (5th Cir. 2021).

A district court's grant of a motion to dismiss based on an argument raised for the first time in a reply brief is reviewed for abuse of discretion. *See, e.g., Residents of Gordon Plaza, Inc. v. Cantrell*, 25 F.4th 288, 296 (5th Cir. 2022).

A court's determination that an amendment would be futile under Rule 12(b)(6) is also reviewed de novo. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016).

**B. Standard of Review on Denial of Motion for Leave to Amend.**

This Court reviews a district court's denial of leave to amend under Rule 15(a), on grounds other than futility, for an abuse of discretion. *See Whitmire v. Victus Ltd.*, 212 F.3d 885, 887 (5th Cir. 2000); *see also Thomas*, 832 F.3d at 590–91. The district court's discretion is limited, however, by Rule 15(a), which states that leave to amend must be "freely given when justice so requires." FED. R. CIV. P. 15(a)(2). Where the district court's denial of leave to amend was based solely on futility, this court applies a de novo standard of review 'identical, in practice, to the

standard used for reviewing a dismissal under Rule 12(b)(6). *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023).

**C. Standard of Review on Denial of Motion for Reconsideration.**

This Court typically reviews the denial of a motion for reconsideration under Rule 59(e) and Rule 60(b) for an abuse of discretion. *See ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847 (5th Cir. 2006); *Walker v. Transfrontera CV de SA*, 634 F. App'x 422, 426 (5th Cir. 2015). Where the denial of reconsideration turns on the futility of a proposed amendment, that legal determination is reviewed *de novo* because it mirrors the Rule 12(b)(6) standard. *Biron v. Upton*, 737 F. App'x 713, 716 (5th Cir. 2018) (holding that dismissal with prejudice without notice of the pleading deficiency or an opportunity to amend constitutes an abuse of discretion).

**D. Standard of Review on Rule 60(a) Ruling**

A district court's decision to correct an order under Rule 60(a) is reviewed for abuse of discretion. *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 194—96 (5th Cir. 2011). But this standard of review only applies to clerical or mechanical errors, which are mistakes "of recitation, of the sort that a clerk or [scrivener] might commit" and does not "provide for the correction of the deliberate choice of the district judge, even where that deliberate choice is based on a mistake of law." *Id.* at 194-96. Whether Rule 60(a) authorizes the relief at issue is a question of law reviewed *de novo*. *Id.* at 193.

## ARGUMENT AND AUTHORITIES

### I. The District Court Correctly rejected AEF's Challenge to Article III Standing

The sole standing issue raised in the Motion to Dismiss was Article III standing, which AEF challenged under Rule 12(b)(1). (ROA 56—61.) Pollock addressed the standing argument under the stringent 12(b)(1) standard and reached the same conclusion as the district court: AEF's arguments did not implicate Article III standing or provide grounds for dismissal under Rule 12(b)(1). (ROA 156—163, 198—99.)

### II. The District Court Did not Address AEF's Rule 12(b)(6) Argument.

AEF's Rule 12(b)(6) ground for dismissal was essentially failure to state a claim that AEF breached a contract. (ROA 37—38, 143—45.) Pollock responded that he had not asserted a breach of contract claim and that the Motion to Dismiss did not address Pollock's asserted claims. (ROA 163—64.) The district court did not address AEF's Rule 12(b)(6) argument. (ROA 199—202.)

### III. The District Court Committed Reversible Error by Dismissing the Entire Suit with Prejudice Under Rule 12(b)(6).

#### A. The District Court's *Sua Sponte* Rulings Without Notice or a Chance to Respond Deprived Pollock of a Fair Proceeding.

A district court may dismiss a claim on its own motion as long as the procedure employed is fair. *Davoodi v. Austin Ind. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir.

2014). Fairness in this context requires both notice of the court's intention and an opportunity to respond. *Id*.

1. *The district court committed reversible error by unilaterally converting a 12(b)(1) motion to dismiss into a 12(b)(6) motion and dismissing the lawsuit based on grounds raised for the first time in the reply brief.*

The only standing issue raised in the Motion to Dismiss was rooted in Article III and dismissal was sought under the stringent standards of Rule 12(b)(1). (ROA 136—143.) "The Court should dismiss Plaintiff's complaint under Rule 12(b)(1), for lack of subject matter jurisdiction".) (ROA 143.) Pollock addressed the Article III arguments in his briefing and, as stated above, reached the same conclusion as the court that the complaint adequately pled Article III standing. (ROA 158—63, 198—99.)

After rejecting the Article III challenge, the district court *sua sponte* converted the 12(b)(1) standing argument to a Rule 12(b)(6) motion. The district court found Pollock failed to state a claim that he had contractual standing to bring suit against AEF because he failed to establish AEF accepted his designation as donor advisor. (ROA 201.) The district court concluded without explanation that amendment would be futile and dismissed with prejudice. (ROA 201—02.) The district court gave no notice of its intent to address standing under Rule 12(b)(6) or an opportunity to respond.

Also, the district court based its ruling on a new modification argument asserted by AEF for the first time in its reply brief. (ROA 200—201.) Arguments raised for the first time in a reply brief are generally waived. *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010); *see also Gillaspy v. Dall. Indep. Sch. Dist.*, 278 F. App'x 307, 315 (5th Cir. 2008) ("It is the practice of this court and the district courts to refuse to consider arguments raised for the first time in reply briefs."). Indeed, "a district court abuses its discretion when it considers new arguments raised for the first time in a reply brief without providing the 'non-movant an adequate opportunity to respond prior to a ruling.'" *Residents of Gordon Plaza, Inc.*, 25 F.4th at 296 (quoting *Thompson v. Dall. City Atty's Off.*, 913 F.3d 464, 471 (5th Cir. 2019)).

2. *The district court committed reversible error by sua sponte dismissing Pollock's claims as Independent Executor and trustee.*

Further the district court ignored Pollock's alternate grounds for establishing his standing to bring claims. Independent of his role as donor advisor, Pollock asserted he had standing because he stepped into Bennett's shoes as Independent Executor of Bennett's estate and as the trustee of the Trust. (ROA 89.) The district court addressed neither of these grounds, but dismissed the entire suit with prejudice. (ROA 202.) The district court addressed the issue for the first time in its ruling on Pollock's motion to reconsider where it stated that Pollock had not "expressly" sued on behalf of the trust or the estate. (ROA 382.)

A person's capacity need not be pled except to the extent required to show the jurisdiction of the court. *See* FED. R. CIV. P. 9(a). Failure to allege the official capacity in the caption is merely a formal error and not a fatal defect. *Parker v. Graves*, 479 F.2d 335, 336 (5th Cir. 1973) (citing 5 WRIGHT AND MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1321 (1969) (3d ed. 2004 & Supp. 2016)). The allegations in the complaint must be examined in order to determine the nature of the plaintiff's cause of action. *Id*.

Trusts and the estates of the deceased lack capacity to bring suit in the name of the trust or the estate. Claims brought on their behalf must be brought in a representative capacity. *See, e.g., Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 466 (1980) (finding that trustees, not the trust itself, are the proper parties to litigation where they hold legal title, manage the assets, and control the litigation). Instead, claims on behalf of each must be brought in the name of the trustee or executor, respectively. *Belt v. Oppenheimer, Blend, Harrison & Tate, Inc.*, 192 S.W.3d 780, 786 (Tex. 2006) (finding that independent executors of estate can bring claim on behalf of the estate). The style of the SAC appropriately identified Pollock as plaintiff and the body of the SAC stated Pollock had standing to seek to enforce the charitable purpose of the fund in his individual capacity, as trustee, and as independent executor. (ROA 89.) Because the body of the SAC sufficiently pled Pollock's various capacities, the deficiency in stating those capacities, if any, was

immaterial. *Miramore Tr. v. United Van Lines, LLC*, 2017 WL 661374, at *3 (N.D. Tex. Feb. 17, 2017) (holding although the third amended complaint did not update the caption, the caption is not determinative when the content of the pleading sufficiently identifies the parties (e.g. the trustee of the trust)) and citing 5 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1321, at 388-91.

The district court's conclusion that Pollock "never expressly brought a claim on behalf of the estate or living trust" ignored the body of the SAC. (ROA 89.) Pollock's pleadings sufficiently established he had an active or special interest in enforcement and proper administration of the Fund separate and apart from his designation as donor advisor sufficient to give standing to bring these claims. The district court adopted the "active or special interest standard" from *Gray v. Saint Matthews Cathedral Endowment Fund, Inc.,* 544 S.W.2d 488, 491 (Tex. App.—Texarkana 1976, writ ref'd n.r.e.), but refused to consider Pollock's active or special interest as trustee or executor. (ROA 382.)

3. *Pollock was denied a fair opportunity to address issues not raised in the Motion to Dismiss.*

Pollock was not on notice that the standing issue would be decided as a 12(b)(6) argument instead of a 12(b)(1) argument and that the ultimate analysis would be based on an argument first made in AEF's amended reply. (ROA 196—200.) ("Thus, Defendant's Motion should not be analyzed under the Rule 12(b)(1) framework. Rather, Defendant's contractual standing argument must be analyzed

under the Rule 12(b)(6) framework.”)). If Pollock had been given fair notice and an opportunity to respond, he would have framed his argument differently, focused on additional facts within the SAC, and the alternate allegations relating to standing as Independent Executor and trustee. Pollock would have also immediately sought leave to file the Third Amended Complaint to include additional facts supporting AEF’s clear acceptance of Pollock as the donor advisor up until 2020. This is material to Pollock because the focus of his response was on Article III standing issues and Pollock’s “active or special interest” in the Fund.

Pollock did not have a fair opportunity to respond to the district court’s contractual standing argument under Rule 12(b)(6) until *after* the district court issued a final judgment. Further, Pollock’s standing as an Independent Executor and trustee was never expressly addressed by the district court. The district court never addressed whether Pollock would have standing as Independent Executor or trustee under the contractual standing or “active or special interest” standards.

Finally, due to the lack of notice and altered grounds for dismissal, Pollock believed in good faith that the Second Amended Complaint adequately addressed Article III standing and, therefore, did not seek leave to amend prior to entry of the final judgment.

4. *The Second Amended Complaint adequately established standing.*

By conditioning Pollock's standing on contractual privity, the district court applied an inapplicable legal framework and then dismissed claims that were never tested under the correct one.

The Second Amended Complaint (SAC) asserted two distinct causes of action: (1) a suit to enforce the charitable purpose of the Fund, and (2) declaratory relief. (ROA 93—96.) Further, Pollock stated three independent grounds to assert these claims: (1) his designation by Bennett as the donor advisor, (2) his role as Independent Executor of Bennett's estate, and (3) his role as the trustee of Bennett's trust which, under Pollock's direction, donated over $4,000,000 to the Fund. (ROA 89.)

The district court only addressed the first ground. Specifically, the district court determined as a matter of law that the Application was a contract that: (1) limited Bennett's future right to designate donor advisors and (2) required written modification accepted by AEF for future designations. The district court then determined that the letter wherein Bennett designated Pollock as a donor advisor did not modify the "contract" because it was not accepted by AEF. (ROA 199—201.) As a result, Pollock was not a donor advisor and therefore lacked contractual standing to bring this suit. (ROA 199—201.) This ruling was wrong for a number of reasons.

i. Pollock adequately pled "an active or special interest" to bring claims against AEF.

Pollock's rights arise at common law from his active or special interest in the enforcement of the charitable purpose of the Fund. *See Gray*, 544 S.W.2d at 491 (standing to sue to enforce the charitable purpose of a charitable trust merely requires an "active or special interest in the enforcement and proper administration of the [Fund]" that is different from the general public); *see also* RESTATEMENT (SECOND) OF TRUSTS § 391 (1959) ("A suit can be maintained for the enforcement of a charitable trust by a co-trustee or by a person who has a special interest in the enforcement of the charitable trust . . . .").

Who has standing to bring claims against a sponsoring organization that fails and refuses to honor the charitable purpose of a DAF or refuses to consider the advice of a donor advisor appears to be an issue of first impression for this or any other circuit. Courts in the Ninth Circuit have discussed the valuable, albeit yet undefined common law rights, associated with being the donor or donor advisor of a DAF. *See, e.g., Musk v. Altman*, 2026 WL 587169, at *9 (N.D. Cal. Jan. 15, 2026) (finding that Musk had standing both as settlor and a special interest as donor advisor and that those rights were exercised in advising the sponsoring organization to donate to OpenAI and noting the Ninth Circuit in *Pinkert v. Schwab Charitable Fund*, 48 F.4th 1051, 1052 (9th Cir. 2022) left open the question as to whether donor advisor rights were "a property right, a contractual right, or something else").

As noted in *Musk*, the role as donor advisor is a valuable right retained by the settlor of a DAF and is part of the definition of a DAF. *Musk*, 2026 WL 587169, at *15. In the absence of claims raised by someone with an active or special interest such as Pollock, sponsoring organizations would be permitted to ignore the charitable desires of the settlor of the DAF just as would be the case with charitable trusts. The policy reasons behind granting standing to those with an active or special interest in a trust should apply equally to a DAF. *Id.* at *9 (commenting that denying a donor advisor standing "would significantly reduce the enforcement of a large swath of charitable trusts, contrary to the modern trend.")

The "active or special interest" doctrine has deep roots in Texas law and is grounded in practical necessity. Courts have long recognized that if enforcement of charitable trusts were left solely to the Attorney General, many breaches of trust would go unremedied. At the same time, courts have been reluctant to grant standing to members of the general public, recognizing that if any member of the public could sue, "the charities and their trustees would be subject to undue harassment." *Coffee v. William Marsh Rice Univ.*, 403 S.W.2d 340, 342 (Tex. 1966) (holding intervenors who assumed active defense of charitable trust action had sufficient particularized interest to appeal where suit was initiated by trustees themselves). The "active or special interest" standard strikes the balance between these competing concerns by limiting standing to those who have a particularized connection to the trust that

distinguishes them from the public at large, while ensuring that charitable trusts are not left entirely without private enforcement.

Texas courts have identified specific categories of facts that give rise to an “active or special interest” sufficient to confer standing. In *Lokey v. Texas Methodist Foundation*, the Texas Supreme Court found standing for a party who was the "chief actor in raising and handling the funds" and was “one of a committee of three charged with the duty and responsibility of directing the distribution” of trust assets. 479 S.W.2d 260, 265 (Tex. 1972). The Court emphasized that such a party had “a special interest not shared by the general public.” *Id.* In *Gray*, the court recognized standing where the trust instrument made it “possible to ascertain definite persons or groups as beneficiaries” who had a relationship to the trust distinct from the general public. 544 S.W.2d at 491.

The common thread running through these decisions is that standing attaches to persons who have a direct, particularized relationship to the trust—whether as a designated fiduciary, a person charged with directing distributions, a donor whose gift was conditioned on a particular charitable purpose, or a specifically identified beneficiary.

Pollock fits squarely within this framework. He is not a member of the general public with no connection to the Fund. He was designated by Bennett as the person authorized to make grant recommendations; he directed the transfer of over

$4,000,000 in assets to the Fund as Independent Executor and trustee; and he was recognized by AEF as the donor advisor for seven years. These facts establish a particularized, active interest in the Fund's administration that is qualitatively different from any interest held by the public.

The Motion to Dismiss and the district court's ruling only addressed Pollock's role as donor advisor and reviewed that ground solely under contractual standing precedent that did not touch on the "active or special interest" body of law. (ROA 198—202.) Also, the district court did not address whether a donor advisor has standing to bring a claim only whether Pollock was a donor advisor. (ROA 198—202.) The district court also did not address whether the estate of the donor or the trust that donated the funds had an "active or special interest."

When reviewed in the light most favorable to the Plaintiff, each of Pollock's roles individually and certainly collectively establish Pollock has an active or special interest in the Fund conferring common law standing. The contract modification straw man relied on by the district court had no bearing on Pollock's standing.

ii. Alternatively, Pollock adequately pled contractual standing.

Appointment of a donor advisor is not an issue of contract, nor does it require acceptance. While the Application does create certain contractual obligations, it did not place a contractual limitation on Bennett's right to appoint donor advisors. (ROA 119—122.) The Application included a section to make such designations at the time

of creating the Fund, but there was no agreement that a contractual modification was required for future designations or that AEF had the right to approve or reject donor advisor designations. The statutory scheme to which DAFs owe their existence gives the donor broad discretion to appoint donor advisors in the very definition of a DAF. *See* 26 U.S.C. § 4966(d)(2)(A)(iii) ("with respect to which a donor (*or any person appointed or designated by such donor*) has, or reasonably expects to have, advisory privileges with respect to the distribution or investment of amounts held in such fund or account by reason of the donor's status as a donor") (emphasis added)).

Conditioning Pollock's standing as donor advisor on AEF's acceptance is unsupported by the law or facts. The Application did not contain a contractual limitation on Bennett's rights to designate donor advisors in the future or grant AEF the right to accept or reject such designations or the right to ignore or reject the advisory privileges bestowed by Bennett (ROA 119—122.) No authority was cited supporting the proposition that a DAF's sponsoring organization can place contractual conditions on the designation of donor advisors or refuses to recognize a designee. (ROA 119—122.)

Pollock pled he is a designated donor advisor and cited to the statutory definition. (ROA 88—93.) Pollock further pled that an AEF officer in 2020, seven years after Pollock's designation as donor advisor, informed Pollock that he could no longer serve as *both* financial advisor and donor advisor to the fund. (ROA 92.)

There are also handwritten notes on the Application which reflect that a "letter authorizing [illegible] to make grants on his behalf" could be sent to Kristin Wilcoxson at an AEF email address, which is further evidence Bennett's letter was an acceptable mechanism to designate a donor advisor. (ROA 121.) Accepting the well-pled factual allegations in the complaint and construing them in the light most favorable to the plaintiff, the SAC adequately pled contractual standing. *See Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002).

AEF alleged in its reply for the first time that the letter designating Pollock as donor advisor did not successfully modify the "contract" (the Application) because AEF did not accept it. (ROA 91.) At best, the argument in the reply raised a fact question as to acceptance, rendering dismissal improper.

iii. Pollock alleged alternate grounds establishing contractual standing other than donor advisor.

The district court's concerns about contractual standing were further addressed by Pollock's alternate grounds of his status as the Independent Executor of Bennett's estate and as trustee of the trust that made the donations. (ROA 89.) Bennett was inarguably in privity with AEF, Pollock assumed those contractual rights as Independent Executor, and Pollock had the right to bring Bennett's claims as his representative. *See Belt*, 192 S.W.3d at 786. The Trust was also in contractual privity with AEF as it transferred the corpus of the Fund at Bennett's behest.

5. *Permitting amendment would not have been futile.*

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

i. The district court erred in finding an amendment would be futile.

In support of the determination to dismiss, the district court states that "Plaintiff does not allege facts that indicate Defendant accepted the change to the Agreement." (ROA 200.) As discussed above, acceptance is legally irrelevant because the SAC contained well-pleaded facts that Pollock was designated by Bennett, submitting the designation by letter was adequate, and that Pollock was the recognized donor advisor from 2013 to 2020. Nonetheless, the district court got hung up on the allegations that after 2020, AEF rejected Pollock's donor advisor status. The district court's ruling makes obvious that an amended pleading could address what happened in the seven years before AEF decided to no longer recognize Pollock

as donor advisor. The district court should have offered such an opportunity, but instead found an amendment would be futile without explanation.

As discussed in more detail *infra*, the proposed Third Amended Complaint further establishes that amendment would not have been futile.

### B. The District Court Abused Its Discretion in Denying Pollock's Motion to Reconsider.

The district court erred for a number of reasons in denying Pollock's Rule 59(e) and 60(b) motions. The substance of a majority of those issues is addressed above in the 12(b)(6)/*de novo* review discussion. The sole issue raised on appeal specifically relevant to the ruling on the Rule 59(e) and 60(b) motions was the district court's erroneous denial of Pollock's motion for post-judgment leave to amend asserted under Rule 59(e).[4]

Where judgment has been entered on the pleadings, a holding that the trial court should have permitted amendment necessarily implies that judgment on the pleadings was inappropriate and that therefore the motion to vacate should have been granted. *See Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981). Thus, the disposition of the Pollock's motion to vacate and for leave to amend under rule 59(e) should be governed by the same considerations controlling the exercise of discretion under rule 15(a). *Id.*

[4] Pollock initially filed a combined Rule 59(e), 60(b), and 15(a) motion, but separated the 15(a) discussion into a separate motion at the district court's behest.

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman,* 371 U.S. at 182. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *Id.* In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Id.*

Futility was the sole issue raised by the district court when it dismissed all Pollock's claims with prejudice. (ROA 199, 202.) The district court provided no discussion of why amendment was futile and raised none of the *Foman* factors. Refusing leave without explanation was an abuse of discretion. (ROA 199, 202); *Foman*, 371 U.S. at 182 ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.").

In its ruling on the Rule 59(e)/15(a) motions, the district court added additional grounds for denying amendment, including (1) undue delay; (2) Pollock's impermissible presentation of arguments seriatim; and (3) that Pollock never

expressly asserted claims on behalf of the estate or trust. These conclusions by the district court were unsupported in the record.

1. *Any delay in Pollock seeking leave to amend was based on the good faith belief the SAC addressed AEF's Article III arguments.*

A trial court abuses its discretion on a post-judgment motion for leave to amend where a plaintiff has a good faith basis for believing its pleadings were sufficient and where amendment would not be futile. *Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 127 (5th Cir. 2019). The appellate court's determination that the district court abused its discretion in denying a motion to amend applying a Rule 15(a) standard is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion. *See Dussouy*, 660 F.2d at 599 (reversing denial of motion for reconsideration of judgment of dismissal where district court abused its discretion in denying motion to amend).

As discussed at length *supra* both Pollock and the district court believed that the 12(b)(1) arguments in the motion to dismiss did not implicate Article III standing. The contractual modification argument was first raised in the reply, which the district court erred in considering and to which the district court failed to give Pollock leave to respond. (ROA 200—201.) Pollock had no notice that the court would find his complaint deficient to aver contractual standing. He was not on notice that the district court would convert the 12(b)(1) issues to 12(b)(6) issues. He was not on notice that the district court would ignore the body of common law that

conferred standing upon those with an "active or special interest in enforcement and proper administration of the [Fund]" and instead require contractual privity as a prerequisite to Pollock seeing his claims through. And he was not on notice that the district court would dismiss the entire case with prejudice without considering Pollock's standing to bring claims as Independent Executor or trustee.

As a result, Pollock believed in good faith that the SAC did not require amendment and there was no undue delay in the timing of the motion for leave to amend and the district court abused its discretion in denying such leave.

*2. Pollock's motion for leave was not an attempt to present arguments seriatim but to bolster the issues the district court identified as deficient.*

As to arguments seriatim, the Independent Executor and trustee standing theories were expressly pleaded at paragraph 10 of the SAC. (ROA 89.) Pollock's attempt to raise it on reconsideration was not presenting a new theory but asking the court to engage with one it had silently bypassed. To the extent the district court believed that contractual standing was the correct legal standard to apply, Pollock's well-pleaded allegations in the SAC demonstrated that he had contractual standing and "active or special interest" standing as donor advisor, Independent Executor, and trustee. The district court erred in refusing to acknowledge the well-pleaded allegations as true, and by refusing to draw reasonable inferences in favor of the non-movant Pollock.

Out of an abundance of caution, the proposed Third Amended Complaint added additional detail on issues already addressed in the SAC by: (1) providing additional factual detail concerning AEF's acceptance of Pollock as donor advisor from 2013 to 2020 and (2) making the technical edit of clarifying Pollock's various capacities in which claims were brought in the body and the caption.

There are at least three additional factual allegations that address Pollock's appointment as donor advisor and AEF's acceptance of that appointment.

First, Bennett modified the Application by including a handwritten note that indicated his intent to appoint Pollock as a donor advisor, which note was guided by AEF's direction. (ROA 248.) Nine days later, Bennett sent a letter to AEF confirming that Pollock had the right to make grants on Bennett's behalf and that AEF could contact Pollock if they had questions. (ROA 248.) AEF did not contact Pollock after receiving the July 18, 2013 letter to notify him of any issues regarding his appointment. (ROA 248.) In September 2013, AEF sent a letter to Bennett and copied Pollock, confirming that the Application had been "accepted." (ROA 249.) At the point of acceptance, AEF not only had the July 18, 2013 letter, but it also had the opportunity to dispute Bennett's appointment. (ROA 249.) With full knowledge of Pollock's appointment, AEF accepted the Application and opened the fund. (ROA 249.) As further support of the modification, AEF copied Pollock on the letter. (ROA 249.)

Second, on March 13, 2023, AEF approved a $200,000 donation to a non-profit with a "Jewish worldview" based on Pollock's recommendation. (ROA 251.) The AEF letter approving the donation was directed to Pollock. (ROA 251.) This donation approval occurred over seven years after Bennett's death. (ROA 251.)

Third, AEF sent a letter in June 2023 to the Estate's agent where AEF confirmed the Board would be willing to consider a list of up to five charities recommended by Pollock that would fulfill Bennett's philanthropic goals. (ROA 251.) The Board further indicated they would consider disposing of the funds through grants to those charities over the next three years before closing the Fund. (ROA 251.) AEF's statement regarding Pollock's ability to make recommendations directly contradicts its previous statements to the Court that there is no acceptance of modification. (ROA 251, 189—192.)

Whether a contract has been modified is a factual inquiry and can turn on a number of factors, including whether the modification was accepted. The foregoing establish facts supporting acceptance of a modification. With that said, the issue of modification was not fairly explored at the motion to dismiss stage, to the disadvantage of Plaintiff.

Therefore, the proposed amendment did not present arguments seriatim but addressed the pleading deficiency noted by the district court and emphasized that Pollock was asserting claims on behalf of Bennett's estate as independent executor.

Had the district court properly given Pollock notice and the opportunity to address these issues at the motion to dismiss phase, there would be no basis for claiming arguments were being raised seriatim. Unlike the plaintiff in *Schiller* (cited by the district court), Pollock would have and did seek leave to file the Third Amended Complaint as soon as he had notice of the contractual standing issues raised by the district and could have cured those issues. *C.f. Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

### C. The District Court Abused Its Discretion by Vacating and Rescinding its Order Granting the Leave to File the Third Amended Complaint.

On September 11, 2025, the district court granted Pollock's Motion for Leave to File Third Amended Complaint due to lack of opposition and treated the Third Amended Complaint as the live pleading. (ROA 364—65, 386—87.) Pollock's Motion for Leave was filed in conjunction with his Motion for Reconsideration under Rule 59(e) and 60(b) and the Third Amended Pleading was the live pleading at the time Pollock filed his reply brief in support of the Motion for Reconsideration. (ROA 300.) On December 9, 2025, the district court invoked Rule 60(a) to vacate and rescind the September 11, 2025 order—but only after Pollock completed briefing on the Motion for Reconsideration and relied on the Third Amended Complaint in his reply brief. (ROA 386—87.) Notably, AEF's counsel requested clarification regarding the September 11, 2025 order, and the district court denied

the clarification request. (ROA 364—65.) This ruling further led Pollock to believe that the Third Amended Complaint was a live and valid pleading.

A district court's decision to correct an order under Rule 60(a) is reviewed for abuse of discretion. But Rule 60(a) only applies to clerical or mechanical errors, which are mistakes "of recitation, of the sort that a clerk or amanuensis might commit" and does not "provide for the correction of the deliberate choice of the district judge, even where that deliberate choice is based on a mistake of law." *Rivera*, 647 F.3d at 194-96. Whether Rule 60(a) authorizes the relief at issue is a question of law reviewed de novo. *Id*. at 193.

In *Jones v. Anderson-Tully Co.*, the Fifth Circuit similarly held that Rule 60(a) applies only to clerical errors or mistakes in transcription or recordation, not to substantive changes reflecting a court's reconsideration of its reasoning or judgment. Corrections under Rule 60(a) therefore may not alter the intended legal effect of the original judgment. 722 F.2d 211, 212 (5th Cir. 1984).

The September 11, 2025 Order Granting Pollock's Motion for Leave to File Third Amended Complaint was not a clerical mistake. The court made an intentional judicial decision on the motion and granted leave because no opposition had been filed, which is a legitimate and deliberate ground for ruling on a motion. The fact that the court later regretted the ruling, or believed it would have decided differently had it appreciated Defendant's opposition, does not transform that decision into the

type of mechanical transcription error Rule 60(a) is designed to address. Indeed, the district court's own December 9 order acknowledged that the September 11 order "accurately expressed the court's intention when it issued [the] order." (ROA 380.) This concession confirms that the original order was a deliberate judicial act, not a clerical mistake, and forecloses use of Rule 60(a) as a vehicle for substantive reconsideration.

Even more troubling is that the vacatur of the ruling occurred after Pollock relied on it to complete his reply brief in support of the Motion for Reconsideration. The district court's decision to vacate the September 11, 2025 order occurred only after the parties completed their briefing on the Motion for Reconsideration and only after the district court denied the Motion for Reconsideration. The district court did not provide Pollock leave to revise his briefing in light of the vacated order. The district court's actions are not only unsupported by Rule 60(a), they were prejudicial to Pollock as the party seeking a Motion for Reconsideration based on well-pleaded allegations in the Third Amended Complaint.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's final judgment dismissing Pollock's claims. The district court erred in converting a Rule 12(b)(1) standing challenge into a Rule 12(b)(6) dismissal based on contractual standing—a theory no party raised in the operative motion and that is not a

prerequisite to any claim Pollock asserted. The district court erred in finding the SAC failed to state a claim. The district court further erred by never addressing Pollock's independently pleaded standing as Independent Executor and Trustee, by dismissing with prejudice without justifying its finding of futility, by misusing Rule 60(a) to vacate a deliberate judicial order granting leave to amend, and by denying reconsideration on grounds unsupported by the record. This Court should remand with instructions to the district court to accept Pollock's Third Amended Complaint and to proceed with the case on the merits.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff-Appellant John Pollock respectfully requests that this Court: (1) reverse the district court's final judgment dismissing Pollock's claims with prejudice; (2) remand this case to the district court with instructions to accept and deem filed Pollocks Third Amended Complaint; (3) direct the district court to proceed with the case on the merits; and (4) grant Plaintiff-Appellant such other and further relief as this Court deems just and proper.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By: <u>/s/*Jeffrey S. Lowenstein*</u>
Jeffrey S. Lowenstein
jlowenstein@bellnunnally.com
Texas Bar No. 24007574
Saba F. Syed
ssyed@bellnunnally.com
Texas Bar No. 24088497

2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
Telephone: (214) 740-1400
Telecopier: (214) 740-1499

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument was served by delivering the same to the person listed below through the court's ECF system on the date indicated.

William S. Helfand
Bill.helfand@lewisbrisbois.com
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
24 Greenway Plaza, Suite 1400
Houston, TX 77046

**ATTORNEYS FOR DEFENDANT-APPELLEE AMERICAN ENDOWMENT FOUNDATION**

**DATED** this 30th day of March, 2026

*/s/ Jeffrey S. Lowenstein*
Jeffrey S. Lowenstein

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.2 and 32.3 the undersigned certifies this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).

Exclusive of the exempted portions by Fifth Circuit Rule 32.2, the brief contains 10,106 words.

The brief has been prepared in proportionally space typeface using Word 2000, Version SR1, in Times New Roman, font size 14. In preparing this certificate, I have relied on the word count feature of the word processing system used to prepare the brief.

The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limitations in FED. R. APP. P. 32(a)(7), may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

*/s/ Jeffrey S. Lowenstein*
Jeffrey S. Lowenstein

11180415.1 / 15080.1